**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 22-CR-00032(FYP)** |
| **BLAS SANTILLAN,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, BLAS SANTILLAN, through his attorney, Kira Anne West, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C. Section 3553(a), respectfully submits this memorandum to aid the Court at sentencing and hereby notifies the Court that she has received and reviewed the Presentence Report ("PSR") prepared in this case. After carefully reviewing the PSR with Mr. Santillan, there are no additional objections.[1] For the reasons set forth herein, Mr. Santillan requests that this Honorable Court impose a sentence of time served, 60 hours of community service and $500 restitution to account for:

1.   His lack of need for incarceration,

2.   His amazing turnaround and commitment to goals that will make him a productive citizen, and

---

[1] Mr. Santillan made minor objections with his previous defense attorney. It should be noted that Mr. Santillan identifies as Mexican, not Caucasian. Also, Mr. Santillan understood that he did not have permission to enter the Capitol when he first arrived on the grounds. However, when he went into the Capitol, police officers stationed at the door did not try to stop him so he then believed momentarily that he could go in. What he saw in the Rotunda confirmed that he did not have permission to enter the Capitol.

3.       His non-destructive and non-violent behavior that day both outside

and inside the Capitol building.

Mr. Santillan  comes before the Court having plead guilty  to count 4 of the

Information filed  charging him with a violation of Title 18 U.S.C. §5104(e)(2)(G),

Entering and Remaining in a Restricted Building or Grounds.  A sentence of  time

served rather than  additional incarceration of any period is a reasonable sentence

that is "sufficient, but not greater than necessary" to address the sentencing factors

and goals set forth in Title 18 U.S.C. § 3553(a).  Under the facts of this case, such

a sentence will protect the public, provide just punishment, and afford adequate

deterrence.

At this juncture, the government has committed two logical fallacies of note

that hinder their "argument." The first fallacy being a fallacy of composition:

assuming that a part (Mr. Santillan) of the whole (the protesters) has all the

properties of the whole itself. That is, the government's mistake is thinking that,

because Mr. Santillan is a part of a larger crowd (in which other members of the

crowd were indeed violent) he also shares in the same properties as everyone else

in the crowd (being violent), but he does not. The first fallacy leads nicely to the

government's second fallacy of reason: *petitio principii* or begging the question.

This second fallacy is a fault in reasoning where one assumes the conclusion he or

she  is trying to prove. In this case, the government is assuming their conclusion

without producing a valid argument with true premises that leads to that conclusion. Rather, the government is associating Mr. Santillan with other members of a larger whole and thus foregoing any kind of argument that is specific to Mr. Santillan. The discussion *infra* explores in more detail these two fallacies.

## 1. <u>BACKGROUND</u>

Mr. Santillan has had a hard life, and this is evidenced in his prior criminal record, yet this record is several years old now. Of late, he is on the rise. He entered a plea as soon as the government extended an offer and he has complied with all of his conditions of release. He has expressed remorse about his presence at the Capitol[2]. He was cooperative when arrested. He engaged in no violence or property destruction during his brief time at the Capitol. He lost many job opportunities. Although his conduct was ill informed and unlawful, it was neither aggressive nor hateful. Every communication he had with police officers that day was positive. None of them asked him to leave. Mr. Santillan assisted two other protesters that had been sprayed with tear gas. The situation was chaotic as the Court can see from the videos. The chaos and events from that day clearly clouded his judgment, but as soon as he saw violence erupt in the Rotunda, he got out of there as soon as he could.

---

[2] A letter addressed to the Court is forthcoming. His statement outlined by the probation officer is admittedly inadequate at best.

After the presidential election, Donald Trump (hereinafter "Trump") and his inner circle began spreading the word that the election was "stolen" from him by Democrats and others.   https://www.washingtonpost.com/politics/trump-election-voter-trust/2020/12/20/00282aa6-407a-11eb-8db8-395dedaaa036_story.html. False claims were made on media sources, as well as by the President himself, that the election system had been corrupted and that the integrity of the election should be questioned.

He entered through the East Rotunda doors after a crowd of others. He did not suit up for combat.  He did not obscure his face.  He was not armed. He wore street clothes.  He committed no violent actions during his time inside and outside the Capitol.  He did not destroy or steal anything. His desire was to protest peacefully.

He now stands before the Court again, remorseful of his actions, and asks this Court to exercise grace and compassion in the sentence the Court must give.

## II.  LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense.   Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The court shall also consider the need for the sentence

imposed to: reflect the seriousness of the offense, promote respect for the law, and

provide just punishment; afford adequate deterrence to criminal conduct; protect

the public from further crimes of the defendant; and provide defendant with needed

educational or vocational training, medical care, or other correctional treatment in

the most effective manner. *Id.* at § 3553(a)(2)(A-D).  Section 3553(a) further sets

forth the factors that the Court must consider in fulfilling this provision:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed;
3. The kinds of sentences available;
4. The kinds of sentence and the sentencing range…;
5.  Any pertinent policy statements issued by the Sentencing Commission;
6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

## III.  FACTORS CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)

At sentencing, a district court must impose a sentence that is "sufficient, but

not greater than necessary" in light of the factors identified in §3553(a).    *United*

*States v. Mendoza-Mendoza*,  597 F.3d 212, 216 (4th Cir. 2010), *citing Kimbrough*

*v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)).

### A. Nature & circumstances of the Offense & the History and Characteristics of Mr. Santillan

First, the defense is not aware of any evidence that defendant's entry into the

Capitol was violent in any way.  Second,  he did not engage with others while

5

parading in the Capitol. He was alone.  Third, there is no evidence that he engaged

in any violence or questionable conduct towards law enforcement.   Although the

government argues that Mr. Santillan entered the Capitol by "push[ing] his way

through the Rotunda doors" there is no evidence that he in fact pushed anything.

Moreover, the government again assumes that the two police officers in their photo

depicted in the sentence memo were trying to keep rioters out of the building but

there is absolutely no evidence of that. *See* Gov't Sent. Memo p. 6[3]. Fourth, the

defense is not aware of any evidence that he destroyed or stole any property from

the Capitol. Fifth, based on the Government's investigation, it appears that he

remained in the Capitol building for a limited period of time.  The defense is not

aware of any evidence that he entered any rooms or offices in the Capitol, any

personal space or the Senate or House Chamber.  Finally, he cooperated with

police when he was arrested. He gave them all his social media information.[4]

The government must concede that he committed no violent acts and

destroyed no property. His actions within the Capitol have been tracked on the

CCTV and open source video footage and this demonstrates that while unlawfully

present in the Capitol with no excuse, he did not destroy property, steal property or

commit violent acts.   He entered and exited through doors. And when he spoke to

---

[3] If the Government wants to make these factual proffers, they should have an officer-that particular officer-testify that he was in fact trying to keep people out. There is no evidence of that here.
[4] Like many J6 defendants, Mr. Santillan was barred from most if not all social media platforms.

police officers, it was non-confrontational and respectful. There is no proof as the government says that he "stormed through Rotunda Doors." He never forced his way past police. The video exhibit speaks for itself. He did rant outside the Rotunda doors, but there is no evidence that he actually kicked the door-he just said he was willing to do so. Moreover, he never encouraged anyone else to kick the door. Much of the government's sentencing memo is a lead up of histrionics before Mr. Santillan's own behavior is ever mentioned. *See* Gov't Sent. Memo at pps. 4, 5 &9. The government also states that Mr. Santillan saw violence in the Rotunda but there's no evidence of that. He did see officers in riot gear and he left-good decision making on his part. The police officers in close proximity to him in the videos do not seem bothered by his presence.

This has been a long road for Mr. Santillan and his family. He has his GED. His relationships with many friends and family are strained because of his actions. He pled guilty at an early stage in the proceedings thus saving valuable judicial resources. It is of utmost importance to Mr. Santillan that this Court understand that he is incredibly remorseful for his actions on January 6, 2021. None of his actions will be erased from the internet. It's there forever. He has fully accepted responsibility for his bad judgement in entering the Capitol building by pleading guilty. His personal character and reputation will forever be tarnished. Still, he has

hope that he can continue to serve his community.[5]  He has a job painting houses, which he has done for several years. He waits tables. He no longer drinks.  He is currently in training for an upcoming MMA fight. This is his dream. He is thankful he lives in America where he can pursue such a dream. He hopes to move to his training facility so he can fight full time. He is a member of a local church and has been for several years.

   Mr. Santillan does not seek to minimize the harm caused by his behavior by the explanations in this sentence memo. Nonetheless, in determining what punishment is warranted, this Court should not lose sight that he did no harm, intended no harm, and regrets that he was even there.  He has the support of his family and friends.  His post arrest behavior shows that he is capable of being a very productive citizen and the Court can rely on that as a basis to sentence him to time served considering the 3553 factors.[6]

## B. Need for the Sentence imposed

### 1.  General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct

   The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation.  He has already

---

[5] Flyers that describe  his community service and MMA fights will be emailed to chambers and opposing counsel as they are in the jpeg format.
[6] Mr. Santillan spent one day in jail.

been  punished as noted *supra.*  The public will be adequately deterred by the

sentences meted out against those who perpetrated the violence and mayhem at the

Capitol and the negative publicity and collateral consequences attendant to even a

misdemeanor conviction for those involved.[7] Those who would not be deterred by

these consequences are likely not deterrable. And, a sentence that leaves a person

unable to do his work when other reasonable alternatives exist would not promote

respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who

were less culpable on January 6th will not encourage respect for the law or

promote just punishment, but are likely to  be counterproductive, and labeled as

political posturing.  A sentence of  time served, probation and community service

does constitute punishment  and  it will deter others as one's liberty interests are

curtailed by travel restrictions, reporting obligations, and limitations on one's

personal freedoms. He has been on pretrial release this year  with many

restrictions.  The National Institute of Justice, Department of Justice, issued a

summary of the current state of empirical research stating that "prison sentences

are unlikely to deter future crime," and "increasing the severity of punishment does

little to deter crime."  U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst.

of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel

---

[7] The deterrence factor here is magnified by the J6 hearing ongoing in Congress, the daily reports of other defendants being sentenced or in trial, and the constant barrage of talk show hosts discussing J6 in general.

S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America

199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

**2.  Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of the defendant**

His likelihood of recidivism is very low. He has expressed genuine remorse

and contrition, and  accepted the first plea offer tendered with no hesitation. His

acceptance of responsibility was complete and without reservation.   He met with

the FBI pursuant to his plea agreement. He was honest. Research has consistently

shown that while the certainty of being caught and punished has a deterrent effect,

"increases in severity of punishments do not yield significant (if any) marginal

deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34

Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached

that conclusion, as has every major survey of evidence." *Id*.; *See also* Zvi D.

Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative*

*Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary

available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report,

commissioned by the British Home Office, examined penalties in the United States

as well as several European Countries. *Id*. at 1. It examined the effects of changes

to both the certainty and severity of punishment. *Id.* While significant correlations

were found between the certainty of punishment and crime rates, the "correlations

between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given his current age and other issues consistent with what is mentioned above, the likelihood that he would ever re-offend is unlikely. Especially if the Court gives him a term of probation where he can have treatment for his alcohol issues. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice. Mr. Santillan respectfully requests that the Court impose a sentence of time served in this case in light of his sincere and complete remorse, his non-violent conduct at the Capitol, his early and consistent acceptance of responsibility, and the lack of a need to further deter him.

### C. The kinds of sentences available

The sentencing guidelines do not apply in this case. A sentence of additional incarceration would result in sentencing disparity with other individuals who were similarly charged and behaved similarly. *See infra*.[8]

---

[8] This does not include every case, just a sampling.

Mr. Santillan respectfully asks that the Court impose a sentence of time served combined with 60 hours of community service and the $500 restitution he already agreed to in his plea agreement.  This would be particularly appropriate given his  job and the harsh punishment any additional custodial sentence would impose by potentially causing him to lose a job-again.

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case. *See* PSR paragraph 71.  Defendant's financial condition such that he respectfully submits that he cannot pay any  fine.  He also request  that he not be subject to drug testing as there is no need for it. *See* PSR paragraph 90.

**D. The need to avoid unwarranted sentence disparities**

If this Court were to impose a sentence greater than time served, community service, and/or restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court.  The following cases are a sampling where a class B misdemeanor was charged and pled to and resulted in no incarceration with facts that often were more egregious than Mr. Santillan's:

\*\**United States v. Anna Morgan-Lloyd,* 21-cr-00164 (RCL) (Jun. 28, 2021) (sentenced to probation);
\*\**United States v. Danielle Doyle*, 21-cr-00324 (TNM)(Oct. 1, 2021) (sentenced to probation even though she entered through a broken window and yelled at police officers);

12

**United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (sentenced to probation);
**United States v. Jessica Bustle and Joshua Bustle,* 21-cr-00238 (TFH), ECF Nos. 42 & 44 (sentenced to supervised release with home confinement even though Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied media accounts of violence were accurate, minimized the conduct of all of the rioters, 3) called for a revolution even after the events of January 6, 4) encouraged the rioters to be proud of their actions, and 5) minimized the impact of that day on lawmakers and democracy. *See United States v. Jessica and Joshua Bustle*, 21-00238 (TFH). Judge Hogan imposed a probationary sentence with a short period of home confinement for Ms. Bustle and an even shorter period of home confinement for Mr. Bustle. The government recommended probation in this case.
**United States v. Andrew Bennett,* Crim. No. 21-227 (JEB)(sentenced to three months home confinement and two years probation). According to the government, who recommended probation with a short term of home confinement*,* Mr. Bennett espoused conspiracy theories about the election, was an admirer, albeit not a member of the Proud Boys, and boasted about his conduct. According to the government, Mr. Bennett did not come to the rally in D.C. on a whim, but rather planned it for months. He posted numerous times about conspiracy theories and a fraudulent election. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!". On January 6, according to the government, Bennet began livestreaming video to his Facebook page from outside the Capitol as early as 1:00 p.m. He was in the middle of the growing crowd on the West Front of the Capitol, where some taunted police officers and sporadically threw objects at them. The government alleges that someone near Bennett exhorted others to "move forward" and that Bennett yelled at a police officer. Bennett also filmed assaults on the police officers and continued to livestream events inside the building.

None of this is to suggest that Mr. Bennett should have received a sentence of incarceration, only to suggest that the distinctions the government draws are hard to justify. Comparatively,  Mr. Santillan's conduct would not justify a sentence of incarceration and such disparate treatment. The courts have sentenced some January 6 misdemeanor cases to incarceration, but the nature and

circumstances of those offenses, as well as the history and characteristics of the

defendants in those cases, can be distinguished[9].

     The following cases are a sampling where a class A misdemeanor was

charged and pled to and resulted in no incarceration:

\*\**United States v. Brian McCreary,* 21-cr-00125 (BAH) (sentenced to 3 months
home detention);
\*\**United States v. Jeffrey Witcher* 21-cr-00235(RC)(sentenced to 12 months
probation); and
\*\**United States v. Felipe Marquez*, 21-cr-00136 (RC)  (sentenced to 3 months
home detention);
\*\**United States v. Jenny Louise Cudd*, 21-cr-00068 (TFM)  (sentenced to 2 months
probation)(defendant wore a bullet proof sweatshirt, engaged in a push against law
enforcement officers while yell "go" and "charge" and celebrated property
destruction and lacked remorse) *See* ECF 90.

These class A cases resulted in incarceration:

\*\**United States v. Jennifer Ryan* 21-cr-00050(CRC)(sentenced to 2 months
incarceration)(the defendant posted and live streamed her activity; she was
"publicly cheerleading on a violent attack"(*See* ECF 48); she said the events were
"a prelude to war" she shouted "fight for Trump" and "Hang Mike Pence"; she
tweeted a photograph of a broken window that encouraged additional violence and
she had no remorse;
\*\**United States v. Anthony Scirica*, 21-cr-000457 (CRC)  (sentenced to 15 days
incarceration). Here, remarkably, the defense agreed with the government's 15 day
recommendation of incarceration. The defendant was not remorseful, close to
chamber where vote took place, close to police line, chanted USA at police, and
directed the crowd inside the capitol. He also took photos and video of himself. *See*
ECF 17.
\*\**United States v. Gracyn Courtright*, 21-cr-00072 (CRC)  (sentenced to 30 days
incarceration)(the defendant went onto the Senate floor; picked up a "members
only" sign and only returned it because an officer ordered her to; posted on social

---

[9] Strangely, the government cites a 9th Circuit case to imply that earlier J6 defendants that were sentenced were on some kind of "fast track" program and therefore did not receive sentences of incarceration. *See* Gov't Sent memo p. 16, fn. 9. This is simply false. Undersigned counsel knows of no "fast track" program instituted by the U.S. Attorney's office.

media that showed a complete lack of remorse; and chanted at a line of police officers "whose house, our house and USA, USA.").

All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Santillan's conduct and characteristics. His actions fall on the low-end of the spectrum that day and his culpability appears to be minimal in contrast with rioters who posted hateful messages, destroyed or stole government property and assaulted or threatened the law enforcement officers on that date.

## IV. CONCLUSION

Considering all the applicable factors the Court will consider,  Mr. Santillan respectfully moves this court to impose a sentence of time served, community service, $500 restitution and a short term of probation.   This sentence  is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a).  It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Santillan as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Respectfully submitted,

By:   _____/s/_____
      Kira Anne West
      DC Bar No. 993523
      712 H. St. N.E., Unit #509
      Washington, D.C. 20005
      Phone: 202-236-2042
      kiraannewest@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify on the 15th day of September, 2022 a copy of same was

delivered to the parties of record, by email  pursuant to the Covid standing order

and the  rules of the Clerk of Court.

_____/S/
          Kira Anne West